**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN JOSEPH FORJONE,**

                        **Plaintiff,**

vs.                                                  **1:11-cv-639**
                                                         **(MAD/DRH)**

**FEDERATED FINANCIAL CORPORATION OF**
**AMERICA, as Assignee of Advanta Bank Corp.,**

                        **Defendant.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**JOHN JOSEPH FORJONE**
141 Harris Avenue
Lake Luzerne, New York 12846
Plaintiff *pro se*

**SHEPPARD, MULLIN, RICHTER &**        **SUSAN G. ROSENTHAL, ESQ.**
**HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      In a complaint dated June 2, 2011 (the "Complaint"), Plaintiff *pro se* alleges that Defendant, through fraudulent means, converted an application for a credit card into a promissory note that it then exchanged "for a bank liability to create an[ ] 'open' credit-card account." *See* Dkt. No. 1 at 4. Currently before the Court is Defendant's motion to dismiss the Complaint. *See* Dkt. No. 7.

## II. BACKGROUND

Approximately twelve years ago, Plaintiff claims that he was offered a credit card for his business from Advanta Bank Corporation, which has since been dissolved. *See* Dkt. No. 1 at 3. Plaintiff asserts that "[a]n alleged debt was incurred against this account, [and] as of April 2006 it was alleged at 19889.19." *See id.* In a March 31, 2006 letter, Defendant informed Plaintiff that it had purchased his account from Advanta Bank Corporation and that the outstanding balance of the account was $19,889.16. *See id.* at 12.

Plaintiff claims that he was never fully informed of the terms and conditions "of the alleged 'accounts.'" *See id.* Moreover, Plaintiff asserts that, in series of events that are not altogether clear, Defendant committed fraud in its dealings with him. *See id.* at 4. For example, Plaintiff asserts that "Defendant Assignee following the Federal Reserve Corporation's monetary expansion rules in the Fed's publication titled 'Modern Money Mechanics,' employing the 'transaction concept' of money, converted the application made by Plaintiff into a Promissory Note and exchanged it for a bank liability to create and 'open' credit-card account." *See id.* Thereafter, Plaintiff claims that "Defendant Assignee also 'raised an asset' when it opened these 'accounts' using [his] signature[.]" *See id.*

On April 7, 2008, Defendant filed a complaint in New York State Supreme Court, Orleans County, against Plaintiff to recover the debt accumulated on his Advanta Credit Card. *See* Dkt. No. 1 at 20-23. In its state-court complaint, Defendant claimed that Plaintiff defaulted on its debt on July 6, 2005. *See id.* Plaintiff filed an "Affidavit in Support of Motion to Dismiss the Complaint" on May 6, 2008, in which he challenged the state-court's personal jurisdiction and

venue. *See* Dkt. No. 1 at 3, 14-15.  Plaintiff, however, did not dispute the existence of the debt alleged in Defendant's complaint. *See id.* at 14-15.

In the state-court action, Defendant ultimately moved for, and was awarded, a default judgment against Plaintiff for $41,192.46, representing the debt accumulated on Plaintiff's credit card, plus interest from the date of default. *See* Dkt. Nos. 7-3 and 7-4.[1]  In the affidavit of facts submitted in support of Defendant's motion for default, Defendant's Vice President of Portfolio Services stated that Defendant "maintained and rendered monthly statements of account to [Plaintiff], who accepted and retained said statement[s] without dispute," and that the state-court action "was commenced to recover . . . for breach of a written Business Credit Card Agreement in the amount of $32,117.46 representing the agreed price, reasonable value and balance due [Defendant] from [Plaintiff], not part of which has been paid, although duly demanded." *See* Dkt. No. 7-4.

Currently before the Court is Defendant's motion to dismiss, in which it asserts that Plaintiff's action is barred by the doctrine of collateral estoppel and, alternatively, that Plaintiff has failed to state a claim for which relief may be granted. *See* Dkt. No. 7-1.

---

[1] Although these documents were not attached to the Complaint, "[i]n the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Ferrari v. County of Suffolk*, ___ F. Supp. 2d ___, 2011 WL 2297125, *3 n.4 (citations omitted); *see also Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 n.3 (2d Cir. 2000) (citing Fed. R. Evid. 201).

3

### III. DISCUSSION

**A.     Standard of review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

4

*Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citation omitted).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

5

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

**B.     The *Rooker-Feldman Doctrine*[2]**

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (citations omitted). The doctrine is grounded in the principle that 28 U.S.C. § 1257 vests jurisdiction to hear appeals from the highest court of each state exclusively in the United States Supreme Court. *See id.* at 292 (citations omitted). District courts may not, therefore, adjudicate what are in essence *de facto* appeals from state court judgments. *See id.* (citations omitted). The doctrine is jurisdictional, and not grounded in the same considerations as preclusion law. *See id.* at 292-93. The application of the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

---

[2] Although not raised in Defendant's motion to dismiss, the Court may address the applicability of the *Rooker-Feldman* doctrine *sua sponte* because the doctrine relates to the Court's subject matter jurisdiction. *See, e.g., Miller v. County of Nassau*, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006) (citations omitted).

6

rejection of those judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2006) (citing *Exxon*, 544 U.S. at 284, 125 S. Ct. at 1521-22).

The Second Circuit has set forth a four-pronged test to determine whether *Rooker-Feldman* precludes a federal district court from exercising jurisdiction over a claim:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" – *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*Id.* (internal footnote omitted); *see also MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137-38 (E.D.N.Y. 2006).[3]

In the present matter, both the first and fourth "procedural" requirements have clearly been met, at least with respect to several of Plaintiff's claims. Plaintiff lost before the Supreme Court, in that the court issued a default judgment against him and he failed to appeal or move to vacate that judgment. Further, judgment was entered on June 25, 2008, and Plaintiff failed to challenge the entry of judgment in the Supreme Court, or otherwise appeal.

---

[3] *Exxon Mobil* explicitly abbrogated *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996). *Moccio* improperly articulated the *Rooker-Feldman* doctrine as essentially co-extensive with the doctrines of *res judicata* and collateral estoppel. *See Moccio*, 95 F.3d at 199-200 (holding that "[w]e agree that the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion" (quotation and other citations omitted)). Though the ultimate outcome is generally identical, *Exxon Mobil* clarified that *Rooker-Feldman* is a jurisdictional doctrine, whereas *res judicata* and collateral estoppel are not. *See Exxon Mobil*, 544 U.S. at 293.

The second and third requirements of the *Hoblock* test merit closer consideration. The second *Hoblock* inquiry is whether the federal-court plaintiff's claims arise from injuries caused by a state-court judgment. The *Hoblock* decision describes this element as "the core requirement from which the others derive." *Hoblock*, 422 F.3d at 87; *see also McKithen v. Brown*, 481 F.3d 89, 96-97 (2d Cir. 2007). Although the determination of whether an injury is caused by a state-court judgment may be "far from obvious," the Second Circuit has instructed that

> a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88.

In the present matter, several of Plaintiff's claims appear to argue that he was injured by Defendant's actions in obtaining the state-court judgment. This judgment, when subsequently executed, has the effect of depriving Plaintiff of his property and causing the injury that he asks this Court to address. In his fifth and eighth causes of action, Plaintiff appears to allege fraud in regard to Defendant's conduct in state court. Were the Court to accept these arguments and rule in Plaintiff's favor, it "'would effectively declare the state court judgment fraudulently procured and thus void[,]'" in violation of the *Rooker-Feldman* doctrine. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167 (E.D.N.Y. 2010) (quotation omitted). Thus, because Plaintiff's current claims relating to Defendant's allegedly fraudulent practices in state court are inextricably intertwined with the state-court proceedings, the Court finds that these are barred by the *Rooker-Feldman* doctrine. *See id.*

8

In his memorandum of law in opposition to the motion currently before the Court, Plaintiff makes several statements that make clear that most, if not all, of the claims in the Complaint are challenges to the validity of the state-court judgment.  For example, Plaintiff makes the following statements in support of his position: "The Defendants judgment is not valid[;]" "Lack of Jurisdiction to render a judgment or order lies in CPLR 5015(a)(4) lack of Jurisdiction to render judgment or order, the judgment is void the defendants argument can not pass and no affidavit or merits is necessary because '[s]uch a judgment is a nullity, irrespective of the question of merit[;]" "It should also be noted that no time limit whatsoever applies to a motion to vacate a default judgment that is void for lack of jurisdiction[;]" "The Court can see clearly the Judgment is Void[;]" and Defendant's judgment is void because its suit was not brought within the applicable statute of limitations. *See* Dkt. No. 8 at 1-4.  All of these arguments demonstrate that much of the relief sought in the instant suit is a reversal of the state-court's judgment and, therefore, is barred by the *Rooker-Feldman* doctrine.

Further, the fact that Plaintiff now relies on legal theories not raised in the state-court action is of no moment.  The Second Circuit has explained that "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court."  *Hoblock*, 422 F.3d at 87.

Moreover, Plaintiff seems to argue that his injuries were caused by Defendant's efforts to obtain a state-court judgment against him.  By these allegations, Plaintiff appears to argue that his injury was caused not by the state-court's judgment, but rather by Defendant's decision to seek judgment against him.  *See, e.g.*, Dkt. No. 1 at 5 (arguing that "Defendant's malicious use of the court process in the furtherance and perpetuation of this Fraud is demonstrated in the filing of the instant action, and is plain on its face").  However, to credit this claim – particularly where, as

9

here, the purported injury suffered by Plaintiff stems exclusively from the state-court judgment sought by Defendant – would render obsolete the *Rooker-Feldman* doctrine because "*every* state court judgment is prompted by a litigant's application." *Trakansook v. Astoria Federal Savings and Loan Assoc.*, No. 06-CV-1640, 2007 WL 1160433, *5 & n.4 (E.D.N.Y. Apr. 18, 2007) (emphasis in original).

Based on the foregoing, the Court finds that, to the extent that Plaintiff seeks an order declaring Defendant's state-court judgment void, the Court lacks subject-matter jurisdiction over those claims.[4]

---

[4] Plaintiff seems to argue that his claims should be exempt from the *Rooker-Feldman* doctrine under a fraud exception. While the Second Circuit "has never recognized a blanket fraud exception to *Rooker-Feldman*," *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 186-87 (2d Cir. 1999), some courts in this Circuit have allowed plaintiffs claiming that a state-court judgment was procured by fraud to escape the doctrine. *See Marshall v. Grant*, 521 F. Supp. 2d 240, 244-45 (E.D.N.Y. 2007) (holding that allegations of "perjury, fraud and misrepresentations . . . are the type of claims held by the *Exxon Mobil* Court to be independent from the state judgment because they allege fraud in the procurement of the judgment and not just that the state court issued an incorrect opinion" (citing *Exxon Mobil*, 544 U.S. at 293; *Mac Pherson v. State Street Bank and Trust Co.*, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006)). Other courts have gone the other way. *See O'Donnoll v. United States*, No. 05 CV 713, 2007 WL 983311, *4 (N.D.N.Y. Mar. 30, 2007) (holding that "the fact that Plaintiff alleges fraud does not make the *Rooker-Feldman* doctrine inapplicable") (citing cases); *Seabury v. City of New York*, No. 06 CV 1477, 2006 WL 1367396, *6 (E.D.N.Y. May 18, 2006) (holding that "to the extent plaintiff brings the instant complaint as a means to challenge the state court decisions, this Court lacks jurisdiction to consider Plaintiff's claims that the state court judgment was procured by perjury, fraud and deceit") (internal quotations omitted); *see also Schuh v. Druckman & Sinel, L.L.P.*, No. 07 Civ. 366, 2008 WL 542504, *7 (S.D.N.Y. Feb. 29, 2008). In the present matter, the Court need not reach this issue because the so-called fraud that Plaintiff seems to allege – notably, without any specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure – stems not from fraud in the procurement of the state-court judgment, but instead primarily from Defendant's procurement of the underlying debt.

**C.     Res judicata**

Even if Plaintiff could escape the confines of the *Rooker-Feldman* doctrine, his claims are barred under the doctrine of *res judicata*, or claim preclusion, which provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284-85 (2d Cir. 2000) (citations omitted).

"The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law." *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 WL 141053, *6 (S.D.N.Y. Jan. 22, 2007) (citations omitted).  Accordingly, this Court's analysis "is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192-93 (1981)).  "'Under the doctrine of res judicata, a final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof.  The rule applies not only to claims litigated but also to claims that could have been raised in the prior litigation.'" *Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009) (quotation and other citation omitted).  Finally, "a defendant who lost the prior action cannot assert a new defense by way of collateral attack on the judgment."  18 *Moore's Federal Practice 3d*, § 131.20(1) (Matthew Bender 3d ed.); *see also Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005).

11

To begin, the state-court default judgment is a final adjudication on the merits. *Cf. Done v. Wells Fargo Bank*, No. 08-CV-3040, 2009 WL 2959619, *4 (E.D.N.Y. Sept. 14, 2009) (holding that "[a] judgment of foreclosure and sale obtained by default constitutes a decision on the merits"); *Rosendale v. Citibank, NA*, 262 A.D.2d 628, 628 (2d Dep't 1999); *see also EDP Medical Computer Systems, Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007) (holding that "[i]t has long been the law that default judgments can support res judicata as surely as judgments on the merits" (citing *Morris v. Jones*, 329 U.S. 545, 550-51 (1947))). Next, the requirement of privity is similarly met. The parties in the state-court action were identical to the parties in the matter presently before the Court.

Lastly, the majority of Plaintiff's causes of action present claims that arise from the same factual grouping at the center of the prior state-court proceeding – namely, issues surrounding whether Plaintiff was mislead regarding the terms of the credit card agreement and whether Defendant had a valid right to enforce the agreement. For example, Plaintiff's first cause of action is entitled "Fraud," and claims that "Defendants' Assignee of ADVANTA Bank Corporation cunningly induced Plaintiff to sign an 'application' for a credit card account," and that "Defendant Assignee then converted the application and signature thereon into a Promissory Note." *See* Dkt. No. 1 at 4. Plaintiff's second and third causes of action are similarly entitled "Fraud on the Contract" and "Fraudulent Conveyance." *See id.* at 5. These are precisely the types of issues that should have been raised in the state-court action because they pertain to alleged improprieties during the formation and signing of the credit card agreement and its subsequent purchase by Defendant. Plaintiff's causes of action entitled "Mail Fraud," "Wire Fraud," and "Forgery" similarly should have been raised in the state-court action because they

also pertain to Defendant's alleged fraudulent conduct and its right to enforce the agreement and collect the debt owed.

Although not alleged in his Complaint, Plaintiff argues in his memorandum of law that Defendant violated his rights under the "Fourth, Fifth, Seventh, and Fourteenth Amendments of the Constitution, substantive due process, Title 42 U.S.C. § 1983 an[d] the Federal Fair Debt Collections Practices Act." *See* Dkt. No. 8 at 11. As part of his explanation for these new causes of action, Plaintiff explains that

> the[re] was actually no loan made and that the signature of Plaintiff was converted in to promissory note and deposited it into a transaction account[.] The Defendants purpose to create new money for itself without disclosure to the plaintiff, the[re] by eliminating both the cost and the risk. They then converted promissory note for a bank liability while at the same time raising a corresponding bank asset for itself without disclosing this to the Plaintiff. . . . Nowhere in the banks agreement is it disclosed who keeps the "asset" when the "liability" extended to the Plaintiff is repaid. The corresponding "bank asset" in the deposit account is the bookkeeping entry that proves that the borrower actually becomes a lender to the bank in this transaction under the alleged agreement. The defendants have as assignees been part of a policy not to disclose this in the alleged agreement, plaintiff has been duped into loaning his own money even though the Defendants at no[ ] cost or risk to the Defendants, without disclosure to the Plaintiff, thereby plaintiff supplied defendants with actual property, his labor, with no plan to return "asset" extended by defendants to the Plaintiff. The Plaintiff would have never knowingly agreed to such a fraudulent arrangement.

*See id.* at 10-11. Even if these claims were properly before the Court, it is clear that they all concern the "transaction, or series of connected transactions, out of which the [first] action arose;" and, therefore, they could have been presented in the state-court action. *See Trakansook*, 2007 WL 1160433, at *7 (holding that the plaintiff could have presented her federal constitutional claims in the state-court foreclosure action and they were, therefore, barred by the doctrine of *res judicata*) (citations omitted); *see also North Assur. Co. of Am. v. Square D. Co.*,

13

201 F.3d 84, 87 (2d Cir. 2000) (holding that "a prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not" (quotation omitted)); *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 352-53 (E.D.N.Y. 2010) (applying *res judicata* to bar the plaintiff's FDCPA, FCRA, New York General Business Law, malicious prosecution, abuse of process, and wrongful use of civil proceeding claims because all of these claims could have been raised as defenses in the prior state-court action and involved the same factual allegations that were raised in state court); *Gray v. Americredit Financial Servs., Inc.*, No. 07 Civ. 4039, 2009 WL 1787710, *5-*6 (S.D.N.Y. June 23, 2009).

Finally, Plaintiff attempts to allege that Defendant violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), based on alleged incidents of mail and wire fraud that Defendant committed "in the furtherance and perpetuation of this fraud[.]" *See* Dkt. No. 1 at 6. Since Plaintiff's RICO claims incorporate the factual allegations of the fraud claims, it is clear that these claims arise from the same transaction or series of transactions and, therefore, are barred by the doctrine of *res judicata*. *See Greenstone/Fontana Corp. v. Feldstein*, 72 A.D.2d 890, 894 (2d Dep't 2010) (dismissing RICO claims on *res judicata* grounds because they related to fraud claims that the court had already ruled were barred by *res judicata*) (citations omitted).[5]

---

[5] Even if Plaintiff's RICO claims were not barred by *res judicata*, in the alternative, the Court finds that they should be dismissed because they fail to state a claim. *See Greenstone/Fontana Corp.*, 72 A.D.2d at 894-95. As previously noted, among other deficiencies, Plaintiff has failed to plead with the requisite specificity the existence of a fraud, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Since the first RICO element requires the existence of a fraud, Plaintiff has failed to allege any "'predicate acts to support a RICO claim.'"

(continued...)

Based on the foregoing, the Court finds that Plaintiff's claims are barred by the doctrine of *res judicata*.

**D.     Remaining claims**

Although Plaintiff does not cite to 42 U.S.C. § 1983 in his complaint, he does so in his memorandum of law in opposition to Defendant's motion to dismiss.  Even if the Court were to construe Plaintiff's complaint as alleging causes of action pursuant to section 1983; and even if they were not barred by the doctrine of *res judicata*, it is clear that these claims are meritless.

To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States.  *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983.  *See White v. Monarch Pharmaceuticals, Inc.*, No. 08–CV–0430, 2009 WL 3068217, *1 (2d Cir. Sept. 28, 2009); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 838–42 (1982).

In the present matter, the sole named Defendant is a private corporation not alleged to have any connection with any government body and thus has not acted under color of state law. Although it is true that a private party can act "under color of law" when his "'seemingly private

---

[5](...continued)
*United Republic Ins. Co. v. Chase Manhattan Bank*, 168 F. Supp. 2d 8, 20 (N.D.N.Y. 2001) (quoting *Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989)); *see also Greenstone/Fontana Corp.*, 72 A.D.2d at 894-95.

behavior "may be fairly treated as that of the state itself,"'" no such conduct is alleged here. *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 313 (2d Cir. 2007) (quotations omitted). As the Second Circuit has held, when all that is alleged is that "the private actor had merely resorted to the courts and prevailed in the lawsuit, he would not have been acting under color of law." *Id.* at 315. Moreover, the Complaint is wholly devoid of any allegations concerning the deprivation of any constitutional right, as is required to state a plausible section 1983 claim. *See, e.g., McCarthy v. Wachovia Bank, N.A.*, No. 08–CV–1122, 2011 WL 79854, *6 (E.D.N.Y. Jan. 11, 2011) (citing *Nealy v. Berger*, No. 08–CV–1322, 2009 WL 704804, *4 (E.D.N.Y. Mar. 16, 2009). In the absence of any allegations of a deprivation of a constitutional right against a state actor, it is clear that Plaintiff's section 1983 claim fails to state a plausible cause of action.

Further, in the Complaint, Plaintiff alleges that Defendant violated the "Consumer Fraud Protection Act," and the "Song Beverly Credit Card Act of 1971," and cites to a California state-court case in support of this claim. *See* Dkt. No. 1 at 7. As Defendant correctly notes, however, the "Song Beverly Credit Card Act of 1971" is a California statute which is not applicable to this case. Moreover, New York does not have an act entitled "Consumer Fraud Protection Act," nor is there a national act so named or under a similar title.

Based on the foregoing, the Court finds that Plaintiff has failed to state a cause of action for violations of the "Fourth, Fifth, Seventh, and Fourteenth Amendments of the Constitution, substantive due process, [and] Title 42 U.S.C. § 1983." *See* Dkt. No. 8 at 11; Dkt. No. 1 at 5.[6]

---

[6] The Court also notes that many of Plaintiff's claims are likely barred by the applicable statute of limitations. For example, Plaintiff asserts that he entered into the credit card agreement with Advanta "[a]pproximately 12 years ago." *See* Dkt. No. 1 at 3. Several of the alleged violations occurred during that transaction, including many of the allegations surrounding the alleged fraudulent conduct. *See id.* Thereafter, most of the remaining allegedly fraudulent conduct occurred around April of 2006, when the debt "was incurred against this account." *See*

(continued...)

16

Further, the Court finds that Plaintiff has failed to state a cause of action for malicious abuse of process or for a violation of the "Consumer Fraud Protection Act," or the "Song Beverly Credit Card Act of 1971."

**E.     Leave to amend**

Although a district court should generally "not dismiss a *pro se* complaint without granting the plaintiff leave to amend, dismissal is appropriate where leave to amend would be futile." *Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Here, amendment would be futile as it does not appear that Plaintiff has any viable federal claims that could be brought if permitted to amend the Complaint. *See Cuoco*, 222 F.3d at 112 (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest [ ] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").  Plaintiff's claims that are not barred by the *Rooker-Feldman* doctrine, are barred by *res judicata*; and, therefore, any amendment would be futile.

---

[6](...continued)
*id.* The statute of limitations for fraud is six years from the accrual of the claim or within two years from the actual or imputed discovery of the fraud. *See* N.Y. C.P.L.R. § 213; *see also Trepuk v. Frank*, 44 N.Y.2d 723, 724-25 (1978); *Mandarino v. Mandarino*, 180 Fed. Appx. 258, 260 (2d Cir. 2006) (citations omitted).  Further, the statute of limitations for a civil RICO claim is four years from the date when the injury should have been discovered through the exercise of reasonable diligence, *see Rotella v. Wood*, 528 U.S. 549, 552-54 (2000), and it is one year for claims under the Fair Debt Collection Practices Act, *see Ellis v. General Revenue Corp.*, 274 F.R.D. 53, 57 (D. Conn. 2011) (citation omitted). Finally, the statute of limitations for a cause of action brought pursuant to 42 U.S.C. § 1983 is three years, and it accrues when the plaintiff knows or has reason to know of the injury that forms that basis of his action. *See Rimany v. Town of Dover*, 72 A.D.3d 918, 921 (2d Dep't 2010) (quotation and other citations omitted).  As such, it appears that most of Plaintiff's claims are barred by the applicable statute of limitations.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** for the reasons stated herein; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 13, 2011
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge